Morning, ladies and gentlemen. This is the time for arguments in the re-hearing on Bank of Los Angeles v. USDC-W.W. and Judge Kleinfeld is appearing by telephone. Judge Kleinfeld, can you hear us? I can hear you. Very good. So the petitioner may proceed. Good morning. My name is Robert Gombiner and I represent the petitioner Marciano Ellis. I would like to take 15 minutes of time and then the remainder of 30 minutes to go to Mr. Westinghouse. When Marciano Ellis appeared for sentencing, pursuant to the plea, the second agreement, one of two things should have happened. Either the court should have accepted the Rule 11-1 C, the agreement, and sentenced Mr. Ellis to the sentence agreed upon by the parties, or the court should have rejected the agreement and at that point the court needed to address Mr. Ellis personally and give him one of two options. Either the option to persist in the plea and be sentenced absent any plea agreement, or the option of withdrawing the plea, in which case the parties would be returned to their positions prior to the entry of the guilty plea. What do you mean by he could be sentenced not withstanding a plea agreement? He pleaded to what? Second degree? He pleaded to second degree. And the judge was rejecting that so the judge could sentence him as though it were first degree? No, that's not what I'm saying, Your Honor. I'm saying the judge could sentence him to what he had pleaded guilty to, second degree murder, but absent the plea agreement that called for a specific sentence. In other words, the judge could at that point exercise his discretion in sentencing and impose whatever sentence he believed was appropriate for second degree murder. What power does the judge have to reject the plea agreement? The judge has, in a Rule 11E1C situation, basically almost unbounded discretion in rejecting the plea agreement. That's what Rule 11E1C says. Isn't that what the judge did here? No, that's not what the judge did here. When is the judge supposed to make the decision as to whether to accept the plea agreement or not? Under Rule 11, the judge may either make the decision to accept the plea agreement at the time that the plea is entered or may exercise discretion to reject the plea agreement after he has reviewed the pre-sentence report. Wasn't that what the judge did here? He reviewed the pre-sentence report and determined that the plea agreement was unacceptable. And he had earlier indicated, at the time the plea was accepted, that he was retaining the option to do that, that he hadn't accepted anything yet. So is this really a question of formal or substance that you're bringing to us? Absolutely not, Your Honor. This is a question of the basic difference between the judge's power to sentence and the prosecutor's power to charge. So what you're telling us, really, is that the judges have no control. Once the prosecutor and the defendant enter into an agreement like this, the judge is out of the picture and can't reject the agreement. No, Your Honor, I'm not saying that at all. You are saying that largely, at least with respect to the charge bargain part of it. I mean, it might be helpful in this case if we just made believe it was an A agreement instead of a C agreement and left the agreement on the sentence out of it. Because I understand what you're saying. Everybody understands that there was no attempt to cram down the sentence. So it's easier to look at it as if the sentence wasn't there at all. And I understand that point. But it remains the case that the prosecutor is the one who, under our system of justice, gets to decide what is the appropriate charge. And you're saying that the opposite, that Judge Tanner could have rejected the plea agreement right up front. Isn't that correct? The plea agreement? Right. So he rejects the plea agreement. And therefore, by rejecting the plea agreement, what? He may not know in the Amidon case, for example, in the D.C. circuit, you had a very controversial case where the judge probably knew all about the controversial circumstances and may have had some reaction to a lesser degree. But in this case, how is Judge Tanner supposed to know whether or not he should reject this agreement if he thought that the second degree was improper? Are you saying he has no discretion over that? He doesn't have any discretion. In essence, a fraud upon the court or some extraordinary circumstances of that nature, to tell the prosecutor that the case must be tried as a first degree murder case. The prosecutor is, under our system, the only person who decides whether or not the case should be prosecuted as a first degree murder case or a second degree murder case. Well, were we wrong and fine when we said Congress wanted sentencing judges to review charge reduction plea agreements to ensure that such agreements do not result in undue leniency or unwarranted sentencing disparity? The guidance was to assure that judges can examine plea agreements to make certain that prosecutors have not used the plea bargain to undermine the sentencing guidelines. Were we wrong there? You weren't wrong, but that fine doesn't stand for the proposition that once a judge finds a plea agreement to be inappropriate, that what happens is that the plea itself is vacated. In fact, in fine, what happened was there were 14 counts in the indictment. The prosecutor dismissed 12 of them. The parties proceeded to sentencing on the remaining two counts. And nothing in fine says that when the judge found that the plea agreement was, in his opinion, inappropriate, that the remedy was to vacate the pleas to the two remaining counts. In fact, what happened in fine was the defendant was sentenced on the 14th. I'm going to accept this plea, but I'm going to do so conditionally on my review of the agreement in connection with the pre-sentencing report. And it very well may be that after I look at that, I'm going to come back and undo this whole agreement and vacate the plea. You're telling us the judge cannot do that. I am telling you that, and I think this is completely consistent with this Court's process. You're saying a judge cannot do that. A judge cannot. If by vacating the plea, you mean that the judge is in effect telling the prosecutor, you can't bring this charge of second-degree murder. The only thing I am going to accept is a charge of first-degree murder. At that point, the judge has intruded into the prosecutor's domain. Let's go back one step in answering Judge Trott's question, because undoing and doing the timing business is somewhat irrelevant in this case. Let's say the judge has not accepted the plea, has said, well, I'll think about it. I want to see the pre-sentence report. I'm not going to accept the plea today. I want to see everything before I accept the plea. So we're back at the original change of plea here. Is it your position that if the prosecutor and the defendant is a counsel, step up to the podium and say, this defendant wants to plead guilty to mayhem or to treason or some charge that is on the books of the United States Code, the only thing the district judge can do at that point is to say, I'm going to determine whether the plea is voluntary or not. And assuming a final voluntariness, the district judge has no choice but to accept the plea. Is that your position? No, that would be too extreme a position to take. OK, let's make it less extreme. Let's say it is a charge that is clearly factually connected with the matter charged in the indictment. So he's not now pleading to something completely different, but something that is a charge growing out of the facts, which are the subject of the indictment. And the prosecutor, it's not a charge that's in the indictment, because this is a plea bargain, and they've come up with something else. The parties are happy. They step up to the podium and say, your honor, we want to have a change of plea. Does the district court have discretion to do anything other than determine voluntariness? The district court does have one other thing to do. It must be satisfied that there's a factional basis for the plea of guilty. I'm sorry. OK, I'm sorry. So if there's a factional basis for the plea, and there's voluntariness, then in your view, the district court's discretion is exhausted at that point, and the district court has a mundane or simple duty to accept the plea? Well, I would put one cog in it. I think the district court can properly inquire the prosecutor to ensure itself that there is no collusion between the parties, that there is no... Of course there's collusion. What in the world does that mean? Well, I think under the cases that this court has decided, such as Fernandez, Gonzales... You mean the prosecutor's been paid off under the table? Well, I think that's really what... That's all that's left, that the prosecutor's been paid off under the table. Well, let's... Not exclusively, but essentially what we're talking about, there's got to be something because we're essentially talking now about Rule 48. What do you do with the Sentencing Guidelines Manual 6B1.2a that says, in the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges, the court may, may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines. It sounds to me like you would erase that from the books. No, I wouldn't erase it from the books, but I would read it in conjunction with Rule 6B1.3, which says, if a plea agreement pursuant to Rule 11E1a or Rule 11E1c is rejected, the court shall afford the defendant an opportunity to withdraw the defendant's guilty claim. The way I would read the 6B1.2 is, certainly the court can review the plea agreement and certainly it can decide that it is not going to accept the agreement itself, but it can't tell the prosecutor, look, I don't like, in my view, we're prosecuting these gun cases too lightly. You've got to add a 924c to any charge or something like that. That's not what we're talking about here. But that's what an a-agreement is, right? It's nothing but that. So if it's reviewing an a-agreement, that must be what it's reviewing. The court is certainly reviewing the agreement, but what the court is not allowed to do, to hold otherwise really would, I think, plunge our system into chaos. The court is not allowed to substitute its judgment as to what charges are appropriate. Didn't the prosecutor, is it significant that the prosecutor initially charged first-degree murder? I mean, isn't there a first-degree murder charge that was asserted by the prosecutor? Certainly there was a first-degree murder charge that was asserted by the prosecutor. The point is, though, that at the time the defendant was entering his plea of guilty, almost two years had elapsed, and the prosecutor's understanding of the case had changed. There was serious, serious evidentiary problems. How do we know that it changed? How do we know the prosecutors just don't uniformly bludgeon somebody into pleading by overcharging, and then you're saying they can overcharge and then handcuff the courts by taking a plea to something else? Well, we can know that in this case because, as I think the United States Attorney can also address, there was specific – that isn't what occurred here at all. What occurred here was that there were serious problems in the government's case, and the government quite appropriately believed that it was better to get a sure plea to a second-degree murder than take the significant chance of an acquittal altogether. Would it be appropriate for a judge to say, look, you know, I understand you've got this plea, but I'm not taking it until I review the agreement. So first, let's review the agreement, and then I'll see whether I've got to take the plea. And then he says, I'm not approving this agreement. So where are you? There is a provision for consent for the defendant to agree to what the judge did. There is a provision which was – He didn't consent to this. Which did not take place yet. He didn't consent to this. No, absolutely not. Counsel, you said a moment ago that he should have given him an opportunity to withdraw the plea. Yes. And if the defendant does not wish to withdraw the plea, then what does the court do? Does it say, I'm not accepting the agreement, and I'm going to sentence you to life? Can the court do that? The court does exactly this. The court says that if the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or on a showing of good cause in camera that the court is not bound by the plea agreement, afford the defendant the opportunity to withdraw the plea, and then this is the answer to your question, and advise the defendant that if the defendant persists in a guilty plea or a plea of male contender, that this position of the case may be less favorable to the defendant than that contemplated by the plea agreement. The rule couldn't be clearer. The court has to give the defendant a choice. The defendant can't persist in the plea, and if the defendant persists in the plea, the court is not bound by the plea agreement. And was it clear in this case that Judge Tanner accepted the guilty plea itself? I believe it's absolutely clear. The panel still found, and the record indicates, he never said he made all the findings necessary for acceptance of a guilty plea. He told the defendant, if you plead guilty to this case, your rights to a jury trial are gone forever. He found that there was a knowing involuntary plea. He found there was a factual basis. The only thing that the – he had to find there was a factual basis. Otherwise, he couldn't have proceeded. I'm just trying to understand. If he had sentenced the defendant, the defendant did not wish to withdraw the plea, he could have sentenced the defendant to life? He could have. Now, of course, the sentencing guidelines protect the defendant, and that would be an appealable ruling because it would be outside the guidance, but he retained the discretion to sentence the defendant to life. Could you just – I'm not quite sure I understand the answer to Judge Berzan's question. Suppose they came in with a second-degree murder indictment, one count, second-degree murder, and the judge said, I don't think that's enough punishment for this offense. I want to reject that and insist you come back with a first-degree murder charge. Could the judge refuse to accept the plea? No. In my opinion, the judge could not refuse to accept the plea. That's a showing of – No, no, I don't care whether it was corruption or that he didn't understand. I did say the judge doesn't like the charge. He thinks it's not serious enough. The judge is not the one who gets to decide whether the charge is serious or not. That's the way the system works. That's what United States Justice Miller says. One other question is, what is the effect of a judge accepting a superseding information, accepting a plea on the basis of a superseding information, what is the effect of the acceptance of that superseding information upon the existence of the prior indictment? It acts as essentially a dismissal of the prior charge. It would be double jeopardy for the defendant to be sentenced on second-degree murder and be charged on first-degree murder. I didn't say sentence. I said you accept the plea. Right. Based on a superseding indictment, you read the superseding indictment, you say this is what you're being charged with, accept the plea. At that point, what is the status of the superseding, of the original indictment? Well, the original indictment essentially is to suspend an animation, I think is the idea. It can be revived if, in fact, the plea to second-degree murder for some reason falls through. But asking that, the superseding indictment, that's what superseding means. Well, if it falls through, you mean if it's withdrawn. If the plea has been accepted. Right. If it can't fall through, it can be withdrawn, as I understand. And once it's withdrawn, then the indictment is automatically reinstated. That would be my position. I think your position would be the same if you had a situation. In this case, we have a district judge who thought that the plea was too soft. Right. Let's say it went all the way around. The court looked at an indictment and said this is a case where the government has way overcharged. And I can tell there is a sort of thin factual basis for the one counter which the defendant pled is, I can tell the only reason he did it is because of the, he couldn't take the risk of going to trial on this overcharged indictment. And I think the defendant would get acquitted. And I really think the defendant ought to go to trial because this is really a plea that's extracted by overreaching and overcharging on the part of the prosecution. I think your answer would be exactly the same. I have way overtaken my time. I want to cut Mr. Westinghouse off. I'd be happy to answer your question. Does that violate the plea if he doesn't get to have the time? Sorry? Does that vitiate the plea if he doesn't get to have time? It's an excellent question. But it does vitiate an informal understanding between Mr. Westinghouse and myself. Thank you very much. Good morning, Your Honor. This is Bob Westinghouse, a hearing on behalf of the United States of America. The reality of this case is that the government found itself with an indictment for first-degree murder, an evidentiary problem that created great concern as to whether it would be... What was the evidentiary problem? There were a multitude of evidentiary problems, Your Honor, beginning with the fact that every statement made by the defendant to any friend about this homicide included gross exaggerations and outright lies. What about the statement where he's on a wire and he says, yeah, that was me in response to a friend asking about the murder of the cab driver? What's the exaggeration? It is true. He says, yeah, that was me. That was me. But to that same friend days earlier, he had said he took $2,300 from the victim and he displayed what purported to be the victim's taxi license. In fact, the victim never had $2,300 in his life, and his license was found pinned to his lapel when he was discovered. You didn't have the killer? You had the wrong guy? We believe we have the right defendant. I'm hearing you say you weren't sure. I'm saying, Your Honor, the difference between a prostitute and being able to convince a jury of anything involving identity, anything with respect to whether this individual, Marciano Ellis, committed this crime, is a far different question. And that's one that the court never explored. Even though it was repeatedly stated to the court, there are evidentiary problems. We are here today with the second-degree murder because it is better, in the view of the executive branch, to get something out of this case to keep this killer off the street for some period of time than it is to let him walk free. Counsel, I'm missing something here. It strikes me that if he's a cold-blooded, premeditated murderer, it's better to convict him. And if he's innocent, it's much better that he walk the streets a free man than that you get something on him, such as second-degree. Judge Steinfeld, the challenge is to distinguish between the conviction of a prosecutor that the individual charged is guilty, on the one hand, and the challenge of convincing a jury of 12 men and women. The honorable doubt that the defendant is guilty. That's quite a different matter. Counsel, I'd like to ask you a question. Assuming that there is clear error in this case, are the other bailment factors in particular prejudices to be formed? I believe they are, Your Honor, for a number of reasons. First, with respect to prejudice, if the court is wrong in its decision rejecting the plea, the result, if there is not an issue of mandamus, is that this defendant will have to stand trial for first-degree murder. An on-and-on situation. The end result is the struggle with the trial, the struggle for both the petitioner and the government with a trial that may take many weeks, use the judicial resources in that trial, only to have this court, after going through the struggle and I would assume the emotional climax of being found guilty of first-degree murder, come back and say, no, the court was incorrect in its earlier rejection of the plea. There should not have been a first-degree conviction. You may plead guilty to second-degree. That is prejudice. If what Judge Tanner did stands, then a first-degree murder trial is a necessary result, or the government could also decide to drop all charges, too. If what Judge Tanner did in this case stands, the choice for the government is to proceed with a first-degree murder indictment or move to dismiss that charge. The United States would have every intent to proceed with a first-degree murder charge because, as I've stated, the executive branch has a conviction that the evidence is sufficient. But again, that's far different. You could dismiss the first-degree charge and re-indict on second-degree. Yes, Your Honor, but that would be impractical in this case because if the defendant committed the crime, the evidence is quite clear it's first-degree murder. There was premeditation. So your doubts don't go to the difference between first and second? Our doubts go to whether we can put the defendant in the taxi cab. We can put his gun in the taxi cab. You can put the shell casing in his house that was used to kill the driver. Absolutely. There's no question, Your Honor, that the weapon was, in fact, the defendant's weapon. And were you going to testify she bought it for him? Absolutely. No doubt about that. But we can also produce, and the government has produced for the defense, the statements of witnesses that will place the weapon in the hands of the defendant's best friend shortly before the crime occurred. Am I correct? And again, shortly after the crime was discovered. So we have a problem, Your Honor, in demonstrating that this defendant had the gun in the taxi cab. And your position is that once you go in with a situation like this, the judge's hands are tied. You tied the judge's hands by your assessment of the case. No, Your Honor. That is not our position. Our position is that the court has some discretion. What is it? Discretion is a matter of considerable confusion for all of us because of the myriad of court decisions. It is something akin to whether there is a breach of manifest public interest. So is it basically the same on a rule of an A or C agreement as under Rule 48? Is that basically what you're saying? I believe that that is the best standard. But I don't believe the court has to reach that far today. What has made the practical difference? As a practical matter, to gather the tradition in doing this, is that you agree that you're going to later dismiss the original indictment. Yes, ma'am. But I suppose you could have also just gone in and dismissed the indictment under Rule 48 and you could have resuscitated it later if you needed to. Well, there are two problems with that, Your Honor. The court is correct. That could have been done. But if that was done, we then face the potential that the defendant does not plead guilty to second-degree murder. He comes in and says, no, I don't plead guilty to anything. Then we have to go back. In other words, if you had the same C agreement, but instead of agreeing to dismiss it at the end, you agreed to dismiss it at the beginning. Yes, and we dismiss it, and the defendant says, thank you very much, government. I don't choose to plead guilty. Then we are in a position, we've dismissed our indictment. But you can revive it. Your Honor, once we have dismissed the indictment, the only way I know to revive it is to go back to a grand jury. In this instance, there were weeks of work before this indictment was returned. We put approximately 15 to 20 witnesses before the grand jury. We then are faced with the predicament of having to bring each of those witnesses back, create another set of gents material. That's not the only way to do it. They can read it. They could read it, Your Honor. That's correct. It can be summarized for them. That is also correct, Your Honor. They don't even have to be there, most of them. That's correct. May I ask you another question? Can I ask you whether there's any reason for us to reach all these issues of what a judge could do if you presented a plea to him that he didn't like? Do we have to go beyond deciding what happens when a judge has accepted a plea? We've been talking a lot about whether the judge could reject it to start with. The case we have is a judge who has accepted a plea. Should we go beyond that question of what you do once you've accepted the plea, what the judge's authority is then? Should we consider more than that in this case? Your Honor, the court does not have to consider much more than that. The court has already decided in U.S. v. Miller that the district judge must, in accepting or rejecting a plea, make a record as to the prosecutor's reasons for the charge bargain and the court's reasons for rejecting. That was not done here. Does the court have any... You don't disagree that if the judge goes back and says, you know, I made a fine involuntariness, but I thought some more about the evidence and I don't believe it's voluntary, or I made a fine on a factual basis, and time has passed. It's not on my conscience. I thought about it and I now find there's no doubt. You don't disagree that the district judge could go back and undo the guilty plea by reconsidering the findings that are required to accept the plea? Over the objection of both parties? Is that the question? Or just with the consent of the parties? First contact. Over their objection? Over their objection. To any of those, Your Honor, I do not disagree with Judge Krasinski's proposition. If the court concludes that Rule 11 has not been satisfied because there is neither voluntariness nor a factual basis, then the court has the authority and, in fact, the obligation to go back and say this is not correct. And an example of that, I believe, would be the Patterson decision, which reached the right result and respectfully submit for the wrong reason. Let me ask you this question. Were you in court when the plea was taken? Yes, Your Honor. And were you there when Judge Tanner rejected the plea agreement? Yes, Your Honor. And you were there during the colloquy that ensued between the judge and the defendant? Yes, Your Honor. Is there any reason why you didn't call the Judge Tanner's attention to the fact that he needed to address the defendant and tell the defendant that, well, he did set forth his reasons for rejecting the plea agreement, but any reason you didn't object when he didn't point out to the defendant that the defendant had certain alternatives, that he could withdraw his plea or he could let his plea stand and that he could be sentenced to a good, soft bed under the guidelines? I mean, you just sat there while all this was going on. I respectfully disagree, Your Honor. What? I respectfully disagree. I did not just sit there. What did you do? I got the transcript. I understand, Your Honor, and I reviewed the transcript carefully. I believe that both the government and the defense were dumbstruck that the court, after having legally accepted the plea, had disseminated it. More than four months later, on April 17th, announced that it was not accepting it, and we spent the balance of that proceeding attempting to convince the court that this was, in fact, a plea that should be accepted. Well, the court ultimately did not want to hear that, and the court said, we're going to arraign the defendant on the first-degree murder charge. But the court kept telling you to stop acting like the defendant's lawyer until he was supposed to be representing the government and not telling the court that it didn't have the authority to do this. That's exactly what happened, Your Honor. He did not want to hear anything about the reasons for the plea. What should the judge have done at that point? You're not answering my question. I asked you if you pointed out the sufficiency of the judge, that he wasn't following the rules. Your Honor, the sufficiency was certainly pointed out. You didn't tell him, look, you're not following the rules. You're not giving him an opportunity to withdraw his plea or let his plea stand. You didn't point that out to him, did you? Your Honor, at the time the plea was… You knew you were dumbfounded, but you didn't. He was dumbfounded, and the court arraigned the defendant. The man could not even be here. He could have let his plea stand, right? He could have let his plea stand. That was it. Within days. I think that the motion, was there a subsequent motion made where it might be a statement by you that says, so we're going to drive your actual parole out of the court, and I would expect the court to speak to that. Would you please speak up? Oh, sorry. I'm sorry. I'm making a request to get the motion, which I received him after. Within days, Your Honor. All right. So you said, Your Honor, because it was an absolute record, I would ask the court, and I would expect the court to speak, and I would ask the court to inquire into the defendant as to what he was pleased to do if, in fact, the court rejected the plea agreement, because I think it's important. And that's when the court started interrupting you and saying, Mr. Reckinghoff, I didn't understand that my state's attorney represented the defendant. So I don't know where you were going, but you were stopped. Well, you also say, Yes, Your Honor, I believe the court has to inquire of the defendant as to what he wishes to do for his own self-improvement. And I think that's an accident. He represents the defendant. I don't know if that's what I really understand. Judge Ferguson, in answer to your question, Judge Wardle is correct. In answer to your question, at the time of the anticipated sentencing, the only thing that we did was try and persuade the court that the plea ought to stand. When the court said, No, I'm not accepting that plea at any time, at any place, under any circumstances, the court said, I'm going to arraign the defendant and set the matter for trial, and he did. I did not say at that moment. But, Your Honor, the court needs to follow 11-4. Days later, the motion was filed. And the judge, he arraigned him on the first degree murder charge, didn't he? He did, Your Honor. Yeah, absolutely. Guilty or not guilty. He did do that. And nobody objected to that either. Well, Your Honor, in the context of this proceeding in Judge Sanders' court, it was abundantly clear that if we had objected, the marshals might have been there. Am I correct that your position is the same as the petitioners, except that you don't ask that this be sent back to another judge? That's essentially correct. Could you like to have the marshals come haul you away? Well, it hasn't happened yet in my practice, but it may at some point. Are we close there today? All right, your time has expired. Always be sure to bring a toothbrush. All right, you have used all of your time. We'll hear from the respondent. May it please the court, counsel, my name is Peter Gomez, and I, along with my colleague, Gene Wilson, represent the respondent of the United States District Court for the Western District of Washington in this matter. Mr. Wilson has asked me to convey his regrets that he could not be here today to argue this for the reasons that were expressed in our motion to continue the oral argument. This case is about a trial court properly rejecting a plea agreement that is not in the public interest. The court rules sentencing guidelines and opinions of this court and the United States Supreme Court support the panel opinions, reasoning, and conclusions, and those reasoning and conclusions should be adopted by this panel. But the judge did more than reject the plea agreement. Nobody disputes that he could reject the agreement. He actually refused the plea, and it is the position of both of the petitioners, the government and the defendant, is that district judges simply do not have discretion to refuse a plea that is both voluntary and factually founded. I mean, the district court determines there's a factual foundation. If the prosecutor and the defense step up to the podium and the defendant is willing to plead guilty, it is their position that this judge has no discretion but to accept that. And I must say, the rules seem to support that. I mean, if the judge has no discretion, then the public interest must not be vested with the court in that. That's why we have prosecutors. They get paid by the same funds that judges do, and so maybe they are the ones who must determine the public interest. I agree, Your Honor, that if the judge did not have discretion as to whether or not to accept the guilty plea, then the public interest would not enter into it. Where in the rule do you find that discretion? Your Honor, I find it under Rule 11 when the plea is pursuant to a plea agreement under Rule 11E1A. And the court rule specifically states that the government and defendants may enter into agreements where the defendant pleads to a lesser degree and in exchange for that... I'm sorry, where does it say that this judge can reject a plea? Where does it say? I understand that this judge can reject the plea agreement, but what language in Rule 11 do you rely on that gives the district judge discretion to say, Government wants to accept the plea, the defendant is willing to plead, there is a factual basis, the defendant is voluntary, there is counsel present, whereas counsel is a defendant. But I don't feel like accepting the plea today. Where in Rule 11 or anywhere else is that discretion given to the district court? Your Honor, I believe it's in Rule 11E1A and E4 and E2 where they talk about, and it's only in the context of when the plea is subject to a plea agreement. In other words, if the defendant... Now, where does it say that he can vacate the plea on his own? It does not specifically state that, Your Honor. But if it says he can do, if he doesn't want to accept the agreement, that he can then have to tell the defendant and allow him to withdraw it, you would say we should imply into that, or over the defendant's objection, he can vacate it anyway. Yes, Your Honor. What do you do with the language if the defendant then persists in the guilty plea? What does it mean, persist? Your Honor, I'd submit that that language would refer to the situation of a multiple-count indictment, where the defendant is pleading to one or two counts on agreement that the government will dismiss the other counts. In that instance, if the court rejected the plea agreement under 11E1A, the defendant would be permitted to persist in his guilty plea and the other charges would still remain out there. The government could still try him on those charges. But when we have the context of pleading to a lesser-degree charge, of course, the government would not be permitted to do that because of a double jeopardy clause. I believe that is what this Court in the United States v. Cordova-Perez opinion addressed, in that when you have a plea agreement where you're pleading to a lesser degree that necessarily involves a dismissal of the greater charge, the only way to, when you reject that plea agreement, it necessarily rejects the plea. Well, but why isn't the concern of the district court addressable under the sentencing options that are available to a second-degree murder charge? The PSR came in with a recommendation to sentence at the high end of the range. Are you saying that this was such an outrageous case that that was inappropriate and that we should defer to that? And if it was, wasn't there the optimum range, actually, life in prison? Why could the court, if it's as outrageous an undercharge, why wouldn't the court be able to address the concerns that way and adjust all the way up to life in prison? It may be subject to appeal as to whether it was right or not, but why should it be at the front end of the case on the charging side? Well, Your Honor, I believe that goes to the basic reasoning behind the sentencing guidelines and the restrictions that it does place on a court's discretion. Right, that's where the court normally addresses overcharging or undercharging or whether the matter reflects the seriousness of the crime. What you're saying is that the judge can accept a plea of guilty to a second degree, then review the PSR and decide that he, without getting consent of the defendant to review it before accepting the plea, he's now accepted the plea. Now the defendant is subject to a judge who has made up his mind based on reviewing the PSR, and he goes back and vacates the plea itself. And you're saying that's all embedded in Rule 11E4? Yes, Your Honor, if one considers it in connection with the sentencing guidelines. What's the point of Rule 32E, then, that says the judge isn't supposed to look at the PSR before deciding whether to accept a plea? Well, Your Honor, I believe that has to be read... Or without consent of the defendant. Yes, Your Honor, I believe that has to be read in contact with the sentencing guidelines, which specifically state that when a court is reviewing an 11E1A plea agreement, that the court should only accept the plea agreement if the remaining charges adequately reflect the seriousness of the offense. And in a situation... Those two provisions just seem to be going off in opposite directions. And since one is binding on us and the other one isn't, I guess we have to deal with one that's binding on us, Rule 32 and Rule 11. Your Honor, I do not believe that the two rules are inconsistent. Because, as this Court of the United States v. Cordova-Perez stated, if the defendant enters a plea pursuant to a plea agreement to a lesser degree offense, that plea is conditional, inherent in that plea agreement. It's conditional. But doesn't that run into Hyde Square? I don't believe it does, Your Honor, no. It does? Because the Hyde Court and the Cordova-Perez Court were considering entirely different issues, as the panel opinion, I believe, pointed out quite well. In fact, if you look at the Cordova-Perez opinion, they spent a great deal of time considering whether the court had accepted the plea and the plea agreement or whether it had just accepted the plea. So even the Cordova-Perez Court itself recognized that there is a distinction, that they are two separate events. Exactly, and that's why here, when the plea was accepted but not the plea agreement, that the plea can be binding without the plea agreement, no? Well, Your Honor, it's a conditional plea. So it is binding on the defendant with respect to the plea. What's conditional about the plea? There is a conditional plea section. This isn't that kind of a conditional plea. You have a plea, and then if the court doesn't accept the plea agreement, it can be withdrawn. But it's a plea, isn't it? I mean, it's an unconditional plea. On a qualified plea, he says, I'm guilty. It's a conviction, which he then has the right to withdraw under certain circumstances, or the government can withdraw under certain circumstances, under the agreement. And we submit, Your Honor. But there's nothing in the agreement that says, or if the court doesn't like it, he can vacate it. There's nothing specifically outlined and stated in black and white, no, Your Honor? Or red or green or pink. There's an agreement that says, I'm guilty, I plead, I'm convicted. Yes, Your Honor. But if I don't get sentence A, I can withdraw the plea. Or the government can withdraw if it doesn't get sentence A. And so you specify the parties who have a right to set aside the agreement. And you say we should say, implied in that also, is if the judge changes his mind, he can do it. Well, Your Honor, I wouldn't say if the judge changes his mind. I would say that if the judge, pursuant to the sentencing guidelines, reviewed the pre-sentence report and reviewed the plea agreement under 11E1A to dismiss the greater charge, and determined in the exercise of the court's discretion that the plea agreement, the remaining charges did not adequately reflect the seriousness of the offense, then he rejected the plea agreement. I gather that you would agree that Rule 48 has a different standard than the one you're advocating. Absolutely, Your Honor. Why should these two be different? Why should it matter whether the government comes in at the outset and says we're going to substitute, we're going to dismiss the earlier indictment and have a superseding information, or it says we're going to have a superseding information and later we're going to dismiss the indictment? Why does that matter in any way that the public interest should care about? Your Honor, it matters because of the intersection in any charge barging between the executive decision of charging and the judicial power of sentencing. And I believe this is adequately addressed on point in the commentary to the sentencing guidelines, Section 61-2. I know they say this, but I didn't find it convincing when they said it either. I don't understand what difference it makes. There seems to be some notion that the government has to take responsibility for doing this, but eventually they are going to take responsibility for doing this. So what difference does it make what the order is? Well, Your Honor, one of the reasons behind that policy may be to prevent the type of overcharging or bludgeoning a defendant into agreeing to the lesser offense that was referred to earlier here. But they can always revise the indictment. It may be a bother, as he was explaining, but they can revise it. So what difference does it make? Well, Your Honor, it places greater authority or power with the defendant when the defendant is given a situation where, okay, we've now charged you with murder in the second degree. You're not bound to accept it. You can plead not guilty. You can plead guilty. What do you want to do? And if the government wants to continue to dismiss the first degree. Well, I've come to an agreement that says, it's still an agreement, but the agreement is the government will dismiss the charge. There will then be a superseding information. The defendant will then plead to it. And we're just reversing the order of things. And you're saying that that makes all the difference in terms of what standards apply. No, Your Honor. Forgive me if I gave that impression. I do not believe the timing of it has any relation to it. If it's part of the plea agreement, then it doesn't matter when the dismissal occurs. It's only when a dismissal or a plea is presented to the court that is not part of a plea agreement that the Rule 48 betrayal of the public trust or abuse of manifest public interest standard would apply. Under federal law, once the government has indicted somebody for first degree murder, can the government come in and dismiss the indictment without the approval of the court? Just redismiss the indictment? Or does it have to be a motion that has to be granted by the court? There has to be a motion granted by the court, Your Honor. And I would agree with the government and the petitioner that a different standard would apply in that situation What does that mean? If the district court sets the case for trial and the prosecutor doesn't show up... Then you recuse the prosecutor and appoint the attorney general. That's the way they do it in state law. Yeah, well, that's state. You can't really force the government to present the case if she does not present. The court can be there all day. Doesn't the prosecutor have a duty not to present the case? Whatever the judge thinks? If the prosecutor believes that that's an improper case to present? Absolutely, but I do not understand the government to... No, not in this case they didn't. But we were having an interesting theoretical discussion. I disagree with Judge Brenner. The prosecution has to come to court. But it can say what it wants to to the jury when it gets that opportunity. It could say, I acquit the guy. Absolutely. I acquit the guy. And it can also fail to put in key evidence so as to give the jury no choice but to acquit. And your honor... What do you then say to the separation of powers argument? I mean, we've sort of been talking about the rules and all that. But ultimately, if we were to approve what Judge Tanner did here, we would be forcing the government to... Essentially, the court would be making prosecutorial decisions for the government, for the United States, for the Attorney General. The government, for whatever reason, whether it thinks it's improper, doesn't have a case, or whatever reason, thinks it does not want to go forward with the indictment, the candidate indictment that the district court thinks the government should go forward with. And isn't that a classic battle of the power of the two branches? And isn't the correct answer clearly that the judiciary, which is there to adjudicate cases presented to it, is not empowered to force the Attorney General, who, after all, is politically responsible, the U.S. Attorney who works for the Attorney General, who works for the President, who's politically responsible, to go forward with a case where the prosecution thinks, for whatever reason, this should not be prosecuted. Either because it's a bad prosecution, or because it doesn't have a fact, it's going to lose, or whatever. Isn't that ultimately the choice of the executive branch? Absolutely, Your Honor. So, wouldn't the ruling Judge Tanner, in this case, put that power, take it away from the prosecutor, and ultimately put it in the hands of the judiciary, where it does not belong? No, Your Honor, it would not. Because the prosecutor, even in this case, wouldn't have to go through the, perhaps one could call it, the charade of having a trial and not presenting evidence. They could simply bring a motion to dismiss under Rule 48, dismiss the first degree indictment, and charge a second degree. And so we're not talking about the charging decision. But I agree, Your Honor. This is the hopscotch chair of justice. If they had gone three steps over, two steps to the left, it would have been okay. And then we'd be exactly in the same place where we are now, but that would have been okay. What's the point of that? The difference is, Your Honor, when the charging decision is part of a plea agreement, that the courts have been specifically told, we want you to review these plea agreements. What's really strange, if a prosecutor does it this way, he's going to have a second degree charge and a conviction. If he does it the other way, he's going to have a second degree charge and possibly no conviction. And why is the public interest better served that way? Well, Your Honor, because the initial, the executive function of deciding which charges to bring is not implicated when you're, when really what the government and the defendant have done here is they've done a plea negotiation because they want to restrict the sentencing discretion of the judge. But they come back with an A-type, and they simply say, we're going to dismiss the first degree, he's going to plead to the second, open-ended on sentencing. Here we are, Judge Tanner, which is the same result that could have been achieved under, as I read it, under 11E4. That's the difference. I agree, Your Honor. And so Judge Tanner can now agree. The person who's analyzing this, it's a good idea to forget about the 11E1. Right, so we take that out. But now they come back in with a plea agreement. He's going to plead to second degree, no constraints on sentence. What's the difference? The difference is that there is a constraint on sentences, and the constraint is on sentencing guidelines. Well, okay, but so what? So you're saying at that point, even if they come back with a stipulated plea to second degree murder with no constraints on the judge's ability to sentence other than the restraints on the guidelines, Judge Tanner could reject that? Yes, Your Honor. But on the other hand, if they had come in and said we dismiss the first degree murder charge and we substitute an information and the defendant has agreed to waive indictment, then the judge would have to apply the manifest injustice standard and the same exact thing could happen. Yes, Your Honor. Except that the government would be less protected because maybe it wouldn't happen and maybe they wouldn't get their conviction. Yes, Your Honor. And the reason is because in a charge bargain, and I believe the reason that all the parties have had some trouble in addressing exactly what discretion a judge has is because there's a bit of a gray area in a charge bargain. Is it executive or is it judicial? It does trespass on the judicial function of sentencing because it restricts what a court can do. But so does the dismissal. Because ultimately, in other words, I just don't see the difference. I don't see what difference it makes if they dismiss it and substitute second degree. The exact same consequences for sentencing are there. But the additional consequences, there might not be a conviction at all. I thought you told me they couldn't dismiss it without the court's approval. That's correct, Your Honor, but there would be a different standard applied and that standard would be under Rule 48, which is a much higher standard as recognized by the cases cited by the government regarding Rule 48. And those cases specifically state we're not talking about a charge bargain here. We're talking about a straight dismissal. And there is the distinction made because it's not presented to the court as a package. When it's presented to the court as a package. I still want to explain to you about what difference that makes to any interest or under any conceivable theory of the public interest, what difference that makes. Well, Your Honor, other than the one that I have identified in terms of giving more power to the defendant, where you avoid somewhat the power of the prosecutor to overcharge and then say if you agree to the lesser charge, I'm going to dismiss the greater charge. And when it's presented to the court as a single package like that, the defendant is powerless to do anything to prevent that. If it is done more piecemeal where the prosecutor is making executive decisions, okay, I'm going to dismiss this. There's no promises made to the defendant. There's no promises made by the defendant. I'm just going to dismiss this, and I'm going to bring a second-degree murder charge. The defendant now has more power and authority to say, well, let's go to trial, or let's discuss other decisions. And then the prosecutor can say, okay, we're going to trial on first-degree murder and going back to the grand jury. It's just a bunch of steps. It's just the things he was saying. Yes, Your Honor. I don't know why that should be a major substantive difference in the standard of review. It's very hard to explain. There is substance and process. Mr. Garnock, I have a question. Let's put aside that the plea was accepted at the start. Could a judge reject a plea on the grounds that the factual basis here is it's either the more extreme offense or it's nothing? In other words, the lesser-included offense is not presented by the facts. Can a judge reject a plea on that basis so that, let's say, the prosecutor wants to compromise, The only question in the case is identity. It's first-degree murder if you shoot a cab driver in the back of the head. It's not second-degree murder. So can a judge say, looking at the evidence, he's either guilty of first-degree murder or innocent, and I'm not going to accept a plea to the lesser? Is there any authority on that? I'm not aware of any, Your Honor. Could the judge have said that the guidelines don't adequately reflect the theory since it's done an upward departure? Why imprisonment? Well, Your Honor, it could. The pre-sentence report noted that it didn't see any reason for departing upward. Obviously, the court's not bound by that. It makes its own determination. But whether or not it could find that it was not adequately reflected and make an upward departure, there's no question that it was an attempt to hamper the judge's sentencing ability. That's the whole reason why charge bargains are made. But that's a consequence of the sentencing guidelines. Yes, it is, Your Honor. Which many of us don't like. Some of us like a lot. But the Supreme Court has upheld them. And so the reason judges can't sentence any way they want to, even though they think the defendant is much worse than the prosecutor may think he is or the prosecutor thinks he can prove is because of the sentencing guidelines. And that's another appeal. If the district judge wants to depart, there's an authority to do that, but it's limited. I agree, Your Honor, that it's because of the sentencing guidelines and whether one likes them or not that the sentencing guidelines themselves have realized that this could be a problem, that prosecutors could be making charge bargains in order to bind the court hands, basically. And that's why the sentencing guidelines have said, do not accept a plea agreement unless the remaining charges adequately reflect the seriousness of the offense. And that's exactly what we have here. The remaining charges do not adequately reflect the seriousness of the offense. And so the guidelines tell the court that, okay, we recognize we're going to severely hamper your discretionary ability, but we want to make sure, and Congress has stated, But we don't get there anyway unless we regard this guilty plea, which did happen and was not deferred, as somehow conditional. Right? I would agree with that, Your Honor. And I have neglected to say, just because of the nature of the way that the questions have gone, that the court, we submit that the plea was not, in fact, accepted. And I'm out of time, so I won't address that. Did the judge say the sentencing did? He did, Your Honor. Without accepting a plea? Yes, Your Honor. Well, didn't he say the next thing that happens is sentencing? At the end of the going through the whole Rule 11 about the plea? And then he said, okay, now we'll set a date for your sentencing, but he didn't accept the plea? That's correct, Your Honor. Well, when was he going to decide about accepting the plea? At the sentencing date, Your Honor. And, in fact, if we accept that there's no such thing as a conditional plea, as Petitioners submit, then there would really be no other way for a court to review an 11E1A agreement other than deferring the actual acceptance of the plea until he had the opportunity. He did that, but he didn't seem to do that. If he did it, that's how he would do it. Did he say anything? Or do we read this in black or white or red or somewhere? Did he say anything about not accepting? Not specifically say I'm not accepting the plea. No, he did not, Your Honor. He said he hadn't accepted the agreement. Yes. He did. He did. And nor did he say I accept the plea. And, Your Honor, I submit that the conclusion of a plea policy, it's nearly a mantra, how the courts say, I find you've waived your rights knowingly, intelligently, involuntarily. I'm entering a plea of guilty and making a finding of guilty. Let's set the matter for sentencing. And that was not done in this case. Isn't what he did exactly consonant with Cordova-Perez? Yes, Your Honor. Well, Your Honor, in Cordova-Perez, there was no question as to whether or not the court had accepted the plea. In Cordova-Perez, the court actually stated I accept the plea. And it was really only a question of whether it was a conditional plea conditioned on the plea agreement. In this case, it's even clearer that he did not accept the plea agreement, and we submit he did not accept the plea. So an even stronger case, we believe, than in Cordova-Perez. That's where that's my point. If the trial judge were looking at Cordova-Perez, the trial judge would have believed he could do exactly what he did. Absolutely, Your Honor. Yes. So was the panel wrong, the earlier panel, in thinking that the plea had been accepted? We believe so, yes, Your Honor. What was the purpose of that whole proceeding where he went through the whole Rule 11 questioning of the defendant? The purpose of that proceeding, Your Honor, was to make sure that the defendant intended to enter his guilty plea before entering the pre-sentence report and setting the matter for sentencing. And we submit that it is a rather unusual case that a court is going to reject a plea and or a plea agreement because the conduct is not adequately reflected in the seriousness of the charge. And so all the parties were proceeding on the assumption that the plea and the plea agreement would be accepted. And on this point, Your Honor, I don't know if Mr. Westinghouse, when he was cut off at the end of his time here, I don't know whether he was about to mention this, but in their pleading to this court, they had in the past agreed that the plea was not, in fact, accepted. Their position to the initial panel was that the court didn't have the discretion to reject the plea and so that it should be treated as accepted, but it, in fact, was not accepted. So if you're reading 932E, it says, The time to disclose the PSR to the court until the defendant has pleaded guilty means just that he pleads, not that the plea has been accepted. No, Your Honor. It is possible that in this case that rule was violated and that the pre-sentence report was ordered. Why did he order the PSR if he thought that he hadn't accepted the plea? Well, Your Honor, that issue, of course, has not been... Do you think this judge violated Rule 32 and, in fact, didn't intend to accept? So we should dissolve the ambiguity and consider it as accepted by Rule 32. Your Honor, I believe the record does not reflect that the court accepted the plea. Well, that's not my question. I understand. He says okay, and then he goes through this other, including ordering the PSR, doesn't ask if it's okay, he doesn't say it's a conditional plea, do you mind if we go ahead and I look at the PSR before I make a final decision. The rule says it's not to be disclosed to the court until he has pleaded guilty. You said that means an accepted guilty plea. In that ambiguous situation, we're supposed to infer that Judge Tanner violated Rule 32. Your Honor, I agree that if the court determines the plea was not accepted, then there was a violation of Rule 32. That is not what's complained of here. It's not been briefed to the court. That's not my question. It's just ambiguous. You're saying we should find on this record and that the panel erred in doing so that Judge Tanner did, in fact, accept. And you're saying, well, we should assume that when he went ahead and ordered PSR, he did so knowing that he hadn't accepted the plea and, therefore, violated Rule 32. That's how we should construe the ambiguity, in other words. Yes, Your Honor. And I believe the court, in the later proceedings as well as the pleadings to this court, made it clear that it's not. Let's say we don't buy that. Yes. If you don't buy that. Does that disclose your case? It does not, Your Honor, because of what we've spent most of the time here discussing, and that is the conditional plea agreement when a plea is pursuant to a plea agreement to a lesser charge. And that is precisely the case that the United States v. Cordova-Perez addressed. In that case, the defendant was charged with an offense. He pleaded guilty to a lesser offense. That plea was accepted. The court reviewed the pre-sentence report and determined this plea agreement is not in the public interest. It does not adequately reflect the jurisprudence of the defendant. But the whole concept in her lying hat case, which is that the two are inseparable, was exactly what the Supreme Court said we were wrong about in Hines. So I understand that the exact issue was different, but the theory was the same, was it not? No, Your Honor. I believe that the essence of the Cordova-Perez case was not that the plea and the plea agreement are the very same thing and that they cannot be separated. They did state that language that the two are inextricably bound up. Right. They did say that, Your Honor. But they also recognized, because they spent a great deal of the opinion talking about, okay, we know the court accepted the plea, but did the court accept the plea agreement? So they did recognize that in some circumstances there can be a distinction. Okay. And there is a distinction here in that the 132 months is not binding. So that much – there certainly is a distinction, a distinction matter here. But it doesn't go to undo the plea. I'm sorry, Your Honor, I don't – But that doesn't mean that the plea disappears. If you want to refine it, maybe so briefly, but you're talking about the plea. Your Honor, the plea disappears because there's – there was an agreement here under 11E1C as well as 11E1A. And it's the portion under 11E1A that would cause the plea to disappear when the plea agreement was rejected. Thank you, Your Honor. Thank you, Your Honor. That concludes the argument in the case. The case is submitted for decision, and the court stands adjourned.
judges: Schroeder, Pregerson, Reinhardt, Kozinski, Trott, Kleinfeld, Thomas, Wardlaw, Fisher, Gould, Berzon